We'll move on to the first case that is Pension Trust Fund Vs. Mortgage Asset Securitization Transactions, etc. Mr. Wilens. Thank you, Your Honor. May it please the Court, my name is Doug Wilens. I represent the appellant to the Pension Trust Fund for the Operating Engineers. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. The District Court erred in dismissing the complaint on statute of limitations grounds by failing to apply the Supreme Court's decision in Merck to plaintiff's claims under the Securities Act. Instead, the District Court applied an inquiry notice standard, which we submit is no longer valid in light of the reasoning of Merck. Before I get into the bulk of my argument, I want to step back for a moment and briefly discuss the relevant portion of Merck that's at issue today. In Merck, the Supreme Court analyzed the statute of limitations applicable to claims under the Exchange Act. It concluded, based on the statutory language, that the discovery of certain facts is the event that triggers the statute of limitations. It then went on to reject the inquiry notice standard because facts giving rise to an inquiry notice may occur before the discovery of the claim itself. We have two cases that say that inquiry notice applies. Now, if we adopt your view, we would have to overrule those cases? Is that your request? Well, I think in light of Merck, inquiry notice is no longer the standard. So I think, yes, to the extent that there are cases prior to Merck that apply an inquiry notice standard in the context of a Securities Act claim, that analysis is no longer valid. Let's assume we agree with you that the standard is discovery notice under Merck. Do we do the analysis then under that rule as opposed to the inquiry notice rule? Yes. And I guess the question then turns to what constitutes discovery? Exactly. And why do you argue here, assuming that the Merck discovery notice rule applies, why do you argue that your clients did not have the appropriate notice until one year before they filed their claim? Well, I think when you look at the courts that have applied Merck, I think the seminal case is the city of Pontiac case in the Second Circuit. And that sort of set the standard for what constitutes discovery in the context of a securities fraud claim. And what that court said is the standard is, does the plaintiff have sufficient facts? Detail and particularity.  Detail and particularity. Yes. Wasn't there enough out there, though, by the time, you know, I mean, yeah, granted, you're hanging your hat on the Moody's report, but wasn't there an awful lot out there before that? Well, I think the answer to that is no, there's not. What we have is there's a lot of information out there regarding Countrywide and regarding IndyMac and their practices. But you knew that the certificates that you purchased were backed precisely by mortgages originated by Countrywide and IndyMac. And you knew that Countrywide and IndyMac's mortgages were highly, highly questioned. And I agree, and I concede both of those points. But simply by the fact that there's some information in the market regarding Countrywide and IndyMac, and there are bad practices, and the fact that the offering documents simply identify Countrywide and IndyMac as the originators of the bulk of the loans, it doesn't follow, and getting to your question, Judge Fischer, that we can state a cause of action based upon the existence of those things. Wait a minute, maybe you can help me out. So you know that Countrywide mortgages are highly suspect. Yes. You know that, and IndyMac mortgages are highly suspect. You also know that you purchased a certificate. Those certificates are securitized, backed by the very mortgages that you knew were highly suspect. Why isn't that sufficient for a cause of action? Why can't you file a complaint to say we bought these certificates, UBS Bank certified to us that these certificates are good, backed by AAA mortgages, but those mortgages are highly suspect and in fact may not be worth what UBS says. Why isn't that enough for a cause of action? I think it's not enough, because there's nothing in the market that suggests that the specific investments that we made in these certificates was impacted by anything that was going on at Countrywide and IndyMac. Now keep in mind, the news about Countrywide and IndyMac was swirling around even before the offering in this case took place. So therefore, and I think we can all agree that we're certainly on notice of facts that occurred before we actually made the investment. The Supreme Court in Merck talks about not just discovery, but what a reasonably diligent litigant would do. Go ahead. And I said, there's nothing in the market that we could have done. And I concede we are stepping into the place of what would be a reasonably diligent person. But let's look at the information that was out there. There was certainly bad information about Countrywide and IndyMac in the marketplace. There was certainly an indication that these loans were in fact originated by them. But there was no specific facts in the market linking those bad practices to this specific investment. And without that information, how could we plausibly plead a cause of action for a Securities Act claim without any specific information in the market? So you're saying Moody's changed everything? Well, I'm saying Moody's was a significant event that allowed us to breach the wall of what constitutes our ability to state a claim. And let me just, the Moody's downgrade was a significant event. From the point of the offering to the point of the downgrade, those certificates were rated as high as they can be. Nothing changed. So while all this news is swirling around in the marketplace regarding Countrywide and IndyMac, nothing changed with regard to these certificates. They retained the highest rating they could. And when the ratings occurred, when the ratings downgrade occurred, it wasn't like the downgrade shifted the analysis from these are excellent to now they're good. They went from excellent to junk status. So it's our claim that at that point, investors had the link that they could say, okay, there's now a problem with our specific investment sufficient that we can state a cause of action. So Moody's didn't discover this fact overnight. There was something that led Moody's to their discovery. I would suggest perhaps one of the things that led Moody's to their discovery was the case that, forget the fact that your firm was involved with it, but your clients were involved with in Los Angeles County in September of 2008. Isn't the fact that the operating engineers were part of that class action, which they alleged that there were problems with Countrywide's underwriting, wouldn't that have led a reasonable investor to have looked further to make some determination as to whether or not these same kinds of mortgages were the kinds of mortgages backing the certificates? I'd say, no, it doesn't. Certainly, it would lead a reasonable investor to investigate further, but they still wouldn't come up with the answer that, do we have sufficient information to allege a cause of action? What answers did you specifically need? I think we needed specific information that tied the practices, at Countrywide and IndyMac, to these specific investments. There was nothing in the market at any time until the ratings downgrade that indicated that there was a problem. The significance of those lawsuits is very limited. I agree my firm was involved in a lot of the Countrywide litigation, but what that means is those cases were based on false statements made by Countrywide with respect to Countrywide securities. So, it would follow that in a case in that circumstance, that a plaintiff would be on notice of the allegations with respect to Countrywide. Was there anywhere in the documentation backing up your certificates, an indication of how many mortgages and what mortgages were part of the certificates? Not to my knowledge, Your Honor. I mean, there was information that was discussed in the market, but not in the market. There was information about loans that were passed along, but not enough information to put a reasonable investor on notice that they actually had a cause of action. So, your client's investment was worth about $5 million? Correct. What was the entire Master Trust that was sold worth? I don't know the exact number, but I think it was in the billions. In the billions? Yes. Okay. So, your investment was a small percentage? I believe so. The defendants could obviously correct me if I'm wrong on the number. I mean, it was certainly a significant investment for our fund, but our fund, this is one of many investments that they have, and I think that goes to the point of what would a reasonable investor know about the claim? Right now, just because my client was involved, again, in litigation involving Countrywide, that's only relevant to what happened with respect to Countrywide. But you knew all along who backed the certificates that the pension fund owned. Yes. You knew it was Countrywide, and you knew it was Indian. Correct. And I can see that point. And you knew that a good percentage of those mortgages that they had originated were in jeopardy or suspect. I think what I would say is we knew generally there was information in the market that indicated that Countrywide and IndyMac had engaged in bad practices. What's the difference between inquiry notice and a diligent plaintiff? I think what the Merck Court said is there are very different standards as to what discovery constitutes. Inquiry notice are facts that put you on notice that you have to investigate whether a possible claim exists. As opposed to facts that are staring you in the face that could tell you you have to go to court and file a complaint. Or this is the trigger point for the statute of limitations. I think what we're saying is the trigger point is we had to at least have and this is what I was saying about the City of Pontiac case, which every court following Merck has applied, is that we had to at least have sufficient facts to show discovery. And what discovery is, according to the City of Pontiac, is sufficient facts to support the fact that we had a claim. And what we're talking about here is actually we're in the reverse position of what the PSLRA actually, the Private Securities Litigation Reform Act actually wants. Under the court's theory, there'd be an inundation of lawsuits filed before the facts regarding a specific investment because you have everyone worrying, well, there's all this information about countrywide out there. We'd better get a claim on file. Now, if we decline to apply Merck to this case, you have a big problem, don't you? No, you're right. I don't think it really changes it. I mean, what happens... But then you would be on inquiry notice. Well, we would be on inquiry notice, but I think you'd still need the information. The inquiry notice just shifts the burden to what a reasonably diligent investigation would show. What we're saying is there was still no information in the market that linked countrywide and IndyMac to these specific investments. So while they may have a better argument under or a stronger argument, I think we're still in the same place, even if you apply the inquiry notice there. But it's our position. Just something. You argued in your brief that in dismissing the first complaint, the district court applied an erroneous standard. Well, we're dealing with the second complaint here. What relief can you get? What would you want us to do with that? I guess you are correct, Your Honor. It's not a case dispositive issue, but our point is that the district court applied an erroneous standard in requiring us, and let me just say the language from the first order mirrors the second order. So there's no real issue here, but what the court said is you have to plead compliance with the statute of limitations. I know what the issue is, but what relief could you get at this point? What would you want us to do with that? Well, I would say an appropriate order is that the plaintiff pleading a claim does not have to negate the burden of an affirmative defense in its complaint. Okay. All right. Thank you. Thank you, Your Honor. Mr. Zweifack, did I say it correctly? Yes. Good morning. My name is Larry Zweifack. I'm with the firm of Gibson, Dunn & Crutcher. I'm accompanied this morning by Brian Lutz and John Austin of my firm and also Lisa Walsh of the Connolly Foley firm. I'd like to begin this morning by going right to the heart of the issue that's been raised by the appellants in this case. We believe that the Achilles heel of Appellant's case is the original complaint that was filed in this case. Now, why do I say that? If you look at the allegations made in the original complaint and more particularly the allegations that were made with regard to information in the market, well-publicized information in the market, that all occurred before February 2009, it's critical in this case. And I say it's critical in this case because that information demonstrated that the appellants in this case were not only on inquiry notice, but even if you applied Merck to this case, and we believe it shouldn't be applied for many reasons, and I'll get to that soon, even if you applied Merck to this case, those allegations demonstrate that the appellants could have discovered the information that was necessary to bring a claim in this case, number one. Number two, even if you apply the Second Circuit City of Pontiac case, which, as the appellant has indicated, would provide that in order to discover a claim, you have to be able to state a claim under 12b-6, they would also lose in this case. Now, let me explain that. They didn't know that the mortgages, they say in their braces, they didn't know that the mortgages that supported the certificate that they purchased were themselves in jeopardy, that they themselves were suspect until Moody's downgraded those mortgages. So, I mean, if they had pleaded, maybe the district court would have thrown it out. We believe that that argument is flawed for several reasons, and the reason is if you go to the appellant's claim in this case, that claim is the principal reason that appellant's argument fails. Their claim is that Countrywide and IndyMac systematically disregarded all of their underwriting guidelines. They didn't allege that there was one guideline, one particular guideline that was not being applied or in a particular period of time it was not being applied. Their allegation was sweeping. It was all-encompassing. What they argued was that these two originators of loans completely disregarded their underwriting guidelines. Now, where did those allegations come from? Well, that was a complaint that was filed within the statute, right? I mean, within the one-year period following the Moody's downgrade. The original complaint in this case made that allegation and the amended complaints, both the first and second amended complaints. But by then, Moody's had already issued its downgrade of those mortgages. Yes. But we say that the downgrade is not material to this case. If you look at the fact that essentially what the allegation says is that all of the underwriting guidelines were being disregarded, that same allegation, that identical allegation, was being made in cases well before February 2009. We attach that to that. What you're talking about, though, I think, is something akin to storm warnings and public information, which I understand the Supreme Court to put into that category of inquiry notice. It also applies— Not discovery, the actual moment when you can say,  I respectfully disagree, Your Honor. If you look at—you have to look at the difference between the two statute of limitations in this case. The statute of limitations for Section 10b says you have to have a certain amount of information to discover the facts constituting a violation. That's for Section 10b cases under the 34 Act. For the 33 Act, for the Securities Act, you need sufficient information to bring a claim or to find out about the discovery of the untrue statement or omission. It does not say to state a claim the way— Maybe you can touch on whether Merck applies because I think that might help us dispose of this case. It certainly would tell us what to focus on. Certainly. We believe that perhaps the best explanation of why Merck does not apply is in Judge Pauli's decision, which we cite in our brief, Pennsylvania Public Schools Employment Retirement System versus Bank of America Corporation, which was decided in 2012. Judge Pauli, who completely disagreed with the analysis taken by Judge Cote in the FHFA case cited by the appellants, explains that there's critical differences between the language of the two statutes here, of the 10b violation and a Section 11 violation, that essentially means that because of those differences, the concerns that the Supreme Court had in the Merck case are not at issue in a Section 11 case. Our court has treated the two the same, hasn't it? De benedictus? We essentially, for purposes of the statute of limitations— it has treated the cases— it has applied inquiry notice to the two cases— to the two statutes, that's true. But your court has recognized there's a critical difference in those statutes. It has said so in its case law, saying that the difference between those statutes where Section 10b requires scienter, which means that under a 9b pleading standard, a plaintiff would have to be able to find scienter in a case to bring a claim, which is what's required under the Securities Exchange Act statute. That is not required for a Section 11 case. I will ask one further point. There's language in the Supreme Court case that inquiry notice is something that occurs before discovery. And that's what the statute requires is discovery. What is your response to that? First of all, we say that discovery is not required in this case because Merck should not apply to a Securities Act case. But more particularly, what we argue in this case— and this is exactly the holding that— Of course, but then you're back to inquiry notice, aren't you? No. Because this goes to a question you asked earlier, Judge Fuentes, to appellate. What's the difference between the standard for a reasonably diligent investor to discover an inquiry notice? Inquiry notice provides that there should be a point in time where you have a certain amount of information that obligates you to investigate. Right. Let's talk about discovery. The question is discovery of what? Discovery in the context of a Section 11 claim requires that— not that you discover you have a cause of action. You have to discover the untrue statement or omission. What appellants say in this case is that the untrue statement, what was missing from the offering materials, was a disclosure saying that these underwriting guidelines that we are telling you about, potential investor, have been wholly disregarded by IndyMac and CountryWide. The complaint in this case makes it clear that what's missing, what should have been told to a potential investor, is that CountryWide and IndyMac have been completely disregarding their underwriting guidelines. And our point about the allegations in the original complaint is that same missing information, what was missing from the complaint that makes it false and misleading, was alleged in numerous prior complaints, including complaints brought by this party as a plaintiff in this case, before February 2009. Well, your adversary distinguishes those cases as not being this case. How do you respond to that? I completely disagree with our adversary. What CountryWide and IndyMac did was they originated loans. They gathered loans. They did two things with those loans. Number one, they securitized them themselves and sold them to investors. Number two, they sold them to the market, to other parties, who in turn securitized those loans. But the same underwriting standards, or the lack of underwriting standards, that were tainting all those loans, caused problems for the securities that the mortgage-backed securities that CountryWide was issuing, and in this case was alleged to be issued by UBS. So where we completely disagree with appellant is that in those earlier CountryWide decisions, what the courts found where the plaintiff stated a claim in those cases, and they upheld them, they upheld those claims, because they were saying that CountryWide was totally disregarding its underwriting standards when it issued itself securities to the public. That was what was missing from that information, and that is why all those earlier CountryWide decisions are highly relevant. In the Stichting case, by the way, before Judge Felser, she found that other parties were on notice because of the CountryWide litigation before her. She is sitting through the MDL process over all of the CountryWide litigation. The decisions that have been issued by her that indicate that parties were able to state claims under Section 11 by alleging that CountryWide completely abandoned its underwriting guidelines put plaintiffs on notice throughout the marketplace that if they had an allegation like that, they were on notice that that claim has been brought, number one. Number two, it has been upheld by district courts. I get the impression you're still talking about inquiry notice as your preferred standard. Not at all. Rather than the actual discovery to me suggests that you have the facts staring you in the face that are sufficient for you to particularize a claim to survive the motion to dismiss. And we say that the same standard applies to discovery. In other words, let me go back to the statute again. Well, that's what I was talking about, discovery. Yeah. The statute. It seems to me you're arguing awfully hard about something that you don't think makes a real difference. Let me put it this way. It doesn't make a difference in this case as to which standard applies. Right. Because we say that the point that you discovered the false statement in this case was the same point that you were on inquiry notice that there was a false statement. You know, the interesting thing is here, Countrywide and NDMAC are not named defendants in this case. And you, of course, don't represent them. You represent the UBS defendants. Yes. Correct. So the question about misstatements really goes to the misstatements that UBS made  Okay. Correct? Correct. All right. So, I mean, isn't the discovery that's relevant here, is the plaintiff's discovery that UBS knew of something at a relevant time? No, Your Honor. And why would that not be the case? Because this is a Section 11 case. Whatever UBS knew or didn't know is not relevant. All the appellants had to do was find a false or misleading omission. There was no scienta required. Okay. Okay. So – Well, wait a minute. The certificates were purchased from UBS, weren't they? Yes. Which contained certain representations that the plaintiffs say were misrepresentations or false statements. Yes. And they were misrepresentations. And this is what the complaint says. What was misrepresented was that Countrywide and IndyMac were applying certain – But the misrepresentation was made by the UBS entities. Yes. Because it was in the UBS – No, the misrepresentation is that these are good. These are AAA. Yeah. Right? Not that they were false, but they were solid, good, AAA mortgages, and this is what we're securing the certificates with. That is not the allegation of the complaint. Maybe he can clear it up. But I thought that was – The misrepresentation is that they were not as good as represented. Or is it that the mortgages are procured according to a certain standard? It was exactly – What the complaint alleges was that the loans underlying your certificates were complied with certain underwriting standards that were used by the originators. That's why we're going back to Countrywide and IndyMac. They're saying that what Countrywide and IndyMac did was they applied certain underwriting standards. But it was that they applied correct and appropriate and proper procedures. Underwriting procedures. Yes. And they were identified very, very specifically in the offering materials with metrics that were used. But the complaint is that that was wrong. That was false. That was a misrepresentation. Exactly. And that same allegation, the same allegation – and I would like to direct the Court to a chart that is part of the appendix. Where what we do – Where is that? Page 498 through 511 of the appendix. What we do in this chart, and we provided this to the District Court, is it takes allegations made in prior complaints and it compares them on a word-by-word basis to the allegations in the complaints before this Court. That still sounds like inquiry notice. In other words, because it happened over there, we were on inquiry notice that we should have pursued it further and then we should have brought a claim against UBS at a point earlier in time. No. I suggest that when one reads this chart, you've discovered your claim. Does that chart tell you that the certificate that I bought from UBS that the plaintiff's bought, in this case, is backed by falsely originated mortgages? Or mortgages that didn't comply with appropriate underwriting standards? First of all, let me just pick up on that point. This Court in Deed Benedict held that company-specific or shareholder or share-specific information is not necessary to advise someone of a claim. Other courts have found that too. So one didn't need to know detailed granular information about their certificates when the offering materials, in this case, said 91% of the collateral, in this case, are countrywide and IndyMac loans. Prior complaints said across the board. Not all those mortgages are bad, were they? I mean, countrywide underwrote some good mortgages too. Well, the question is, as an investor, when you are told that when there are allegations being upheld by district courts saying you have stated a claim under Section 11, I'm denying the motion to dismiss, when there are allegations that say countrywide and IndyMac systematically disregarded their underwriting guidelines across the board, and that's what this complaint says, that's what this complaint says is missing, you should have advised the investors that countrywide and IndyMac across the board have disregarded their underwriting. You are on notice that as long as you have that information and as long as you've brought cases that make that allegation, you're on notice of the probability that the statement in your documents that say countrywide and IndyMac are abiding by these underwriting standards I just had one question. The mortgages which were part of these certificates, and they're arguing that the certificate, they invested in the certificates, not the underlying mortgages. Were the mortgages that were part of the certificates, were they a bundle of mortgages or were they a percentage of countrywide slash IndyMac mortgages? They were pools of these mortgages together that provided cash flows. So they were, they had a specific bundle, there was a tangible number of mortgages that were part of these pools? Yes. Okay. So it's possible, maybe not likely, but possible that the mortgages that got into this pool that backed these certificates were good mortgages? If one were going through the loans on a loan-by-loan basis, is it possible? The question is, under Twombly, could the plaintiff here have stated a claim, a plausible claim, when there's been a slew of lawsuits filed saying that countrywide and IndyMac have completely disregarded their underwriting guidelines and district courts have said that type of allegation suffices for 12b-6? That's a sufficient allegation, even though you have not linked it to the certificates. Even though you have not linked it to your particular certificates, the fact that you are saying that across the board, countrywide and IndyMac are completely abandoning its underwriting guidelines, that's sufficient for this court and the court overseeing the countrywide cases has held that. Judge? The recent case in Gabelli, are you familiar with Gabelli? This year's Supreme Court case? I'm not familiar. G-A-B-E-L-L-I. I'm sorry. 2013 case. Well, I'll read you what the court said and you can respond. Typical investors do not live in a state of constant investigation. Absent any reason to think that we have been injured, we do not typically spend our days looking for evidence that we were lied to or defrauded. Right. That's the typical investment. I mean, I think we're talking about a plaintiff here that is not typically looking for evidence of fraud and there was no reason to believe, and that's the plaintiff's position, that the mortgages that were bundled or put together that supported the certificates were themselves fraudulently or improperly or wrongly certified. And I respectfully submit that when the plaintiff in this case itself has filed lawsuits alleging that Countrywide has completely disregarded and abandoned its underwriting guidelines, and let's just take a, as an example of that, we cite the Bear Stearns lawsuit, which was filed shortly after the February 22, 2009 cutoff period. But in that lawsuit, even there, and that's part of the materials in this case, the plaintiffs in this case, and that's this plaintiff, represented by the firm that is representing them on appeal in this case, said that at the time of their purchase of the certificates, plaintiff and other members of the class were without knowledge and could not have reasonably discovered these facts prior to late 2008, late 2008, before 2009. So that's this plaintiff talking about allegations that Countrywide has systematically abandoned its underwriting guidelines. We're not saying that... Oh, I'm sorry. You want to finish your sentence? Okay. I apologize. We're not saying that every investor should constantly be on the lookout, but when information of the like that comes to the attention of the appellant in this case exists, a plaintiff cannot sit by idly and do nothing. We respectfully ask that the court affirm the dismissal of the district court. The appellant in this case, just the way the district court found, has asked this court to ask too little of the reasonable investor. A reasonable investor in this case would have either been on notice of its claim or would have discovered its claim, and the claim would have been that the allegations in the offering materials were incorrect because it did not include information to the effect that Countrywide and IndyMac were systematically abandoning their underwriting guidelines. That's my fact. Thank you very much. I don't have the site for that case, by the way, but I'm sure you can find it. This term. Mr. Weiland. Thank you, Your Honor. I'll be brief. I have a lot to respond to. The most glaring thing or jarring thing that jumped out at me is the defense counsel saying that discovery doesn't apply in this case, and I think what counsel is ignoring is the statute of limitations for a Securities Act claim, which says discovery is the triggering event. So when you go back and you take a look at does Merck apply here, with the Supreme Court interpreted discovery in a Securities Fraud claim, the same term should have the same meaning as to what discovery is in a Securities Act claim. Well, except for the Merck Court, didn't it distinguish and say these are two different statutes? And what your adversary said was it's discovery of an untrue statement or admission, not see enter. Correct, and we don't dispute that, but it's not relevant. What we're talking here is what discovery is. All the difference between a Securities Fraud action and a Securities Act action is the facts that need to be discovered at the end of the day. For an Exchange Act claim, it's facts constituting the violation, which the Merck Court said includes see enter. For a Securities Act claim, it's facts concerning the untrue statement or omission. That is the cause of action. That's why City of Pontiac applies here, because all we need to do to show a Section 11 claim is to allege an untrue statement or omission. So the standard from City of Pontiac fits nicely into this paradigm, because you're talking about discovery of an untrue statement or omission. But that's not the portion of Merck we're talking about. We're not talking about what facts need to be discovered. We concede that there are different elements of a Section 11 and a Section 10B claim. What we're talking about for purposes of Merck is what does discovery mean? And I think Judge Fuentes, you hit it right on the head. This Court and even cases cited within Merck itself have applied the standards identically to Securities Act claim before Merck, and there's no reason to apply them differently after Merck. Discovery means the same thing. And when you look at the cases, the majority of cases that have addressed this issue within the context of these similar types of certificates, the courts have actually gone through the analysis and said, what does discovery mean, and have uniformly concluded that it means the same for both statutes. So I think that's responding to one issue that the defendant said. I want to make a point about this Court's case in de benedictus because counsel raised it. I guess there's two points to make about that. First, we say de benedictus is not valid anymore in light of what Merck said, but even more to the point, it's distinguishable. And what the district court missed and what defendants are missing is there were two parts of de benedictus. The first part was an exhaustive review of the registration statement. That case involved the unsuitability of an investment based on the fact that they said the registration statement didn't talk about the fees and expenses for this specific investment. The court looked at the registration statement and said, that information's right there. Of course you're on notice of that. And then they said, and oh, by the way, this general public only bolsters that fact. That circumstance doesn't apply here. Sure, we have the information regarding the- I mean, a while ago when he was asking about this bundling or packaging of mortgages to support securitization, I guess it's a process, but supported the certificates. Are you told at any point in time what's in there, what, you know, the ratio of IndyMac versus countrywide mortgages, how much they're for? No. That information's not available to investors. Is it available in the certificate somewhere? Not that I'm aware of. Do you know that it's countrywide and IndyMac versus any other mortgage originators in the country? I mean, all we can say is that the countrywide and IndyMac originated the vast percentage of these loans. Well, that's nationwide. I guess it's fair to say. I don't think you can go certificate or tranche by tranche and determine what is in there. I think that goes to your point that not every loan that countrywide originated was bad. I'm sure some of them were bad. Some of them may not. A small percentage may not have been. But on a motion to dismiss where we're at a pleading standard, I think it at least raises a question of fact as to whether or not the standard is met. If I could just raise one more point. Defendants raised the Bear Stearns case, and I invite the court to review the Bear Stearns case. We filed a complaint in that case on behalf of this very plaintiff, and the court applied the exact analysis that we're asking that you apply today and found that our client's complaint was timely. So I'm not sure what benefit they get from that. At the end of the day, there was no information in the market prior to the downgrades that would have alerted a reasonable investor that these certificates were bad. And the court there held that the statutes are functionally identical, right? Correct. And that's the same argument we're making here, that for the purposes of discovery, it means the same for both statutes, unless the court has any further questions. Thank you very much. Thank you both. Maybe I surprised you with referencing the Gabelli case, but I do have a cite for you, and I have a statement that is in the case that I'd like to read for you. It says that the statute of limitations in fraud cases should typically begin to run only when the injury is or reasonably could have been discovered. That phrase might make this case somewhat relevant for us. So the cite is, it's Gabelli v. SEC 133, Supreme Court, page 1216. The cite is page 1222. It's a 2013 case. You might want to respond to that with a short letter statement to see whether that case is applicable to this case. So perhaps you can keep your response down to three pages. It's optional, but do it within one week. Thank you. Thank you very much. The case was really well argued. It is a difficult case. We'll take it under advisement. Thank you both.